UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| AUTUMN PEICHOTO, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:19-CV-58-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION AND ORDER |
| SPEEDWAY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court confronts Plaintiff's remand effort. DE #6. Finding the jurisdictional requirements met, the Court denies remand and retains the case federally.

**I.    Relevant Background**

The allegations in this personal injury action are straightforward. Plaintiff Autumn Peichoto avers that she was injured in June 2018, while refueling her vehicle at a Speedway gas station. DE #1-1 at 2 (Complaint), at ¶ 9.[1] Plaintiff maintains that a faulty pump hose sprayed fuel in her eye, causing her "to sustain personal injuries of a permanent nature[.]" *Id,* at ¶¶ 10, 13. The Complaint, pursuing a negligence theory, alleges that Speedway breached its duty of care to properly maintain the premises and avoid dangerous conditions on its property, resulting in Peichoto's harm. *Id.* ¶¶ 9, 11–12. Plaintiff seeks several relief categories, including monetary damages for (1) permanent mental and physical pain and suffering; (2) permanent impairment of her ability to labor and earn; (3) all hospital, medical, and rehabilitation expenses; and (4) "loss of ability to lead and enjoy a normal life[.]" *Id.* at ¶ 13.

---

[1] The Complaint, filed as a part of the larger state court record, begins on page 2 of DE #1-1. In recounting the alleged facts, the Court simply refers to the Complaint's numerical paragraphs.

1

Peichoto filed this case in the Fayette Circuit Court in January 2019, and Speedway removed to this Court just over a month later. DE #1 (Notice of Removal). Defendant invokes the Court's diversity jurisdiction, alleging that Plaintiff is a Kentucky citizen and Speedway (an LLC) is foundationally a citizen of Ohio and Delaware. *See id.* at ¶ 2–4. Speedway further alleges—based on the Complaint's allegations and sought damages, and the fact that Peichoto, given ongoing medical treatment and expenses, withdrew her previous stipulation that the case was worth less than the jurisdictional minimum—that more than $75,000 is here in controversy. *Id.* at ¶¶ 5–6. Plaintiff has moved to remand, disputing the amount in controversy requirement. DE #6. Defendant responded, opposing remand, *see* DE #9, and Plaintiff did not reply.

**II.     Removal Standard**

Removal is proper if the plaintiff could have originally brought the case in federal court. 28 U.S.C. § 1441(a). Diversity jurisdiction—the removal basis here—exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a). The amount in controversy must exceed the jurisdictional minimum at the time of removal. *See Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000); *see also Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007). The burden rests on the removing party to demonstrate the amount in controversy requirement by a preponderance of the evidence. *See Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010); *see also Northup Props., Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 769–70 (6th Cir. 2009) ("The burden is on [the removing party] to show by a preponderance of the evidence that the allegations in the complaint at the time of removal satisfy the amount in controversy requirement.").

In matters removed from Kentucky state courts, the amount in controversy is frequently unclear from the face of a complaint because the Kentucky civil rules bar plaintiffs from specifying the amount of unliquidated damages they seek. *See* Ky. R. Civ. P. 8.01(2). Parties thus often must engage in pre-removal discovery before a defendant can ascertain that a case is removable. *See* 28 U.S.C. § 1446(b)(3) ("[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."). A removing party may satisfy the requirement via "competent proof" of the at-issue amount, *see Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 559 (6th Cir. 2010), which "can include affidavits, documents, or interrogatories" obtained during pre-removal discovery. *Bishop v. Tennessee Gas Pipeline, LLC*, No. 5:17-CV-00424-JMH, 2018 WL 4686416, at *2 (E.D. Ky. Sept. 27, 2018). The definition of "other paper" for § 1446(b)(3) purposes, though, "is broad and may include any formal or informal communication received by a defendant." *Hiser v. Seay*, No. 5:14-CV-170, 2014 WL 6885433, at *2 (W.D. Ky. Dec. 5, 2014). Indeed, "[v]irtually every court that has considered the issue has held that settlement demand letters and other correspondence between parties may constitute 'other paper.'" *Mathes v. Burns*, No. 3:19-CV-00751, 2019 WL 5394310, at *5 (M.D. Tenn. Oct. 22, 2019) (collecting cases); *see also Pope v. Everest Nat'l Life Ins. Co.*, No. 19-CV-10895, 2019 WL 2366590, at *3 (E.D. Mich. June 5, 2019) (considering a medical bill an "other paper" within the meaning of § 1446).

The Court evaluates any proof against the backdrop of "a 'fair reading' of the allegations in the complaint." *Shupe v. Asplundh Tree Expert Co.*, 566 F. App'x 476, 478 (6th Cir. 2014) (quoting *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001)). Always, courts

3

must strictly construe removal statutes and resolve doubts as to jurisdiction in favor of remand. *See, e.g.*, *Brierly, v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999). However, the removal standard "does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount in controversy requirement." *Hayes*, 266 F.3d at 572 (citation omitted). Rather, per the applicable preponderance standard, the "removing defendant must show that it is 'more likely than not' that the plaintiff's claims meet the amount in controversy requirement. *Rogers*, 230 F.3d at 871 (citation omitted).

### III.  Amount in Controversy Analysis

The "other paper" from which Speedway first ascertained removability (in light of the Complaint's allegations and relief demands, as well as prior settlement discussions and exchanged medical expense documentation) was email correspondence from Plaintiff's counsel. Peichoto, through counsel, withdrew a prior settlement offer[2] and, citing expanding treatment and mounting medical expenses, retracted her stipulation that the case was worth less than the jurisdictional minimum:

> I spoke with my client last night and she was just referred to an ophthalmologist who has diagnosed her as having blepharitis (an inflammation of the eyelid) and placed on her a four (4) month course of antibiotics with alternative treatment modalities already being discussed.
>
> As this appears to be something that will be continuing, I must withdraw our current demand and will need to move forward with litigation. Also, with this new information and her treatment progressing more than initially anticipated, I can no longer stipulate that the case will be less than $75,000.00; I just don't know at this point because she is still treating.

DE #1-2 at 2. Alone, a refusal to stipulate to case value below the jurisdictional minimum cannot satisfy the removal burden. *See, e.g.*, *Lobley v. Guebert*, No. 5:16-CV-202-TBR, 2017 WL 1091796, at *1 (W.D. Ky. Mar. 22, 2017) (holding that a response refusing to admit or deny that

---

[2] The withdrawn settlement demand was for $35,000, "exclusive of Med-Pay." *See* DE #6-2 at 2.

the amount in controversy exceeded the jurisdictional minimum, standing alone, was insufficient); *Stratton v. Konecranes, Inc.*, No. 5:10-CV-66-KSF, 2010 WL 2178544, at *3 (E.D. Ky. May 28, 2010) ("A refusal to stipulate, by itself, would not justify removal[.]"); *Davis v. BASF Corp.*, No. 03-CV-40198, 2003 WL 23018906, at *2 (E.D. Mich. Nov. 24, 2003) ("[I]f a defendant asks a plaintiff to stipulate that the damages are below the jurisdictional amount [and] if the plaintiff refuses to stipulate, the case cannot be removed based solely on this refusal.") (citation omitted). A refusal to stipulate to a sub-threshold figure is, though, "at least *some* evidence that [ ] damages [we]re more than that amount[.]" *Miller v. Malik*, No. 11-CV-74-ART, 2011 WL 2968428, at *2 (E.D. Ky. July 20, 2011) (emphasis added).

The treatment timeline and nature, coupled with the Complaint's allegations and claimed damages, provide context for Plaintiff's retracted stipulation and, collectively, satisfy Defendant's removal burden. As of February 4, 2019—roughly eight months after Peichoto's accident—Plaintiff confirmed that she had incurred $8,209.68 in medical expenses to date. *See* DE #6-3 (email). Only 4 days later, she updated her incurred expenses to include reference to a new specialist and an additional "four (4) month course of antibiotics with alternative treatment modalities already being discussed[.]" DE #9-1 (email). Although Plaintiff did not provide an updated medical expense figure related to this development, the treatment costs incurred, undoubtedly, increased from the prior $8,200 tally and, given the extended treatment mentioned, would continue to rise. To estimate pain and suffering damages associated with medical injury, courts have endorsed use of a 5:1 multiplier. *See, e.g.*, *Fenton v. Speedway, LLC*, No. 5:13-CV-063-DCR, 2013 WL 2422877, at *2 (E.D. Ky. June 3, 2013); *Fisher v. May*, No. 3:11-CV-00592, 2012 WL 1964564, at *2 (W.D. Ky. May 31, 2012) ("For instance, it is perfectly reasonable to apply a ratio of 5 to 1 for awards of pain and suffering in comparison to medical expenses to

5

determine the amount in controversy."); *see id.* (collecting Kentucky cases applying even higher multipliers). Here—even excluding the accruing cost of the extended, multi-modal four-month latest treatment course—applying a reasonable 5:1 multiplier to the earlier estimate results in an approximately $50,000 damage sum. And, accounting for the cited continuing treatment, this number surely escalates.

Critically, this already significant amount—encompassing *only* pre-February 4, 2019 medical expenses and related pain and suffering damages—is but a part of the overall damages the Complaint claims. Peichoto alleges permanent pain and suffering. DE #1-1 at ¶ 13(a). Plaintiff, also as of February 4, had already assessed roughly $1,000 in past earning losses. DE #9-2. And, notably, she claims *permanent* impairment of her ability to labor and earn—in, per the record, a reasonably well-paid position that ostensibly requires vision usage. *See* DE #6-2 at 2. Moreover, on top of the medical expense, pain and suffering, and permanent earning and laboring claims, Plaintiff seeks compensation for "loss of her ability to lead and enjoy a normal life[,]" given the claimed permanent injury to her eye and vision. DE #1-1 at ¶ 13(d); *see also* DE #6-2 at 2 (noting that Peichoto's "vision was significantly worse after her eye was sprayed with the gas").[3] Given the centrality of vision to most daily activities and employment tasks, loss of such function— particularly, *permanent* loss—if proven, would logically support a large-sum claim as to this particular category of damages. The description and characterization of Plaintiff's alleged permanent injury in the Complaint, along with the then-known quantified expenses,

---

[3] Significantly, the record reveals a host of injury-related diagnoses within the eight post-accident months: "blepharitis (inflammation of the eyelid" (DE #9-1 at 2); "mild injection of the sclera" (DE #6-2 at 1); "injury to the cornea" (*id.*); and "conjunctiva" (*id.*); as well as several accompanying symptoms: "immediate burning and blurred vision" requiring emergency room treatment (*id.*); continuing "swelling, burning, and redness" (*id.*); ongoing "pain and swelling in her eye" (*id.* at 2); and blurry and permanently worsened vision (*id.*).

representations as to ongoing treatment nature, and additional extensive claimed damages, thus color Peichoto's stipulation withdrawal and, together, demonstrate that removal was proper at the time. Peichoto was 43 at the time of the demand, and her age impacts the loss when quantifying permanency. *Cf. Johnson v. Hartford Fire Ins. Co.*, No. 4:08-CV-74, 2008 WL 3850482, at *4 (W.D. Ky. Aug. 15, 2008) (finding that the defendant should have ascertained removability earlier in light of, *inter alia*, the complaint's claimed "permanent injury . . . and permanent impairment of [ ] ability to earn income in the future[,]" together with counsel communications citing continuing medical treatment).

In sum, though perhaps no one piece of cited evidence—the Complaint's allegations, the stipulation refusal, or the communications regarding incurred expense—would alone satisfy Defendant's removal burden, collectively, they clear the preponderant bar. To reiterate, the Court focuses on the following aspects of this case (as assessed at the time of removal) in so concluding:

- The Complaint's allegations of permanent eye injury, *see* DE #1-1 at ¶¶ 9–13, and Plaintiff's own representations as to injury severity and associated vision loss (a critical life function), *see* DE #6-2 at 1;

- Peichoto's proffered medical expense figures in the first eight months post-injury, as appropriately multiplied to estimate claimed pain and suffering damages;

- The fact that Plaintiff, after eight months of injury-related medical care, received an additional relevant diagnosis, and corresponding treatment course from a new specialist (with other "treatment modalities already being discussed"), that would extend, at minimum, up to a year post-injury, *see* DE #9-1 at 2—and, further, the added pain and suffering damages associated with the additional treatment and expenses;

- In the context of Plaintiff's age, the extensive damages sought in the Complaint— including past and permanent mental and physical pain and suffering, past and permanent ability to earn and labor (as illuminated by Plaintiff's representations as to the nature of her employment and associated pay, *see* DE #6-2 at 2), all past and future medical

expenses (including hospital, other medical, and rehabilitation costs), and "loss of ability to lead and enjoy a normal life," *see* DE #1-1 at ¶ 13(a)–(d);[4] and

- Against this backdrop, Peichoto's retraction of both her previous settlement demand and her former sub-$75,000 stipulation, together with her representation as to ongoing and uncertain treatment (that, as noted, would extend for at least up to a year post-injury). She pulled her compromise offer (at $35,000 exclusive of Med-Pay) and her stipulation as to case scope. This strongly signals a case within the federal jurisdictional sphere.

As discussed, the proof obligation on a removing defendant is not a "daunting burden." *Halsey v. AGCO Corp.*, 755 F. App'x 524, 526–27 (6th Cir. 2018) (confirming that a plaintiff's refusal to admit or deny that a claim falls below the jurisdictional floor creates an inference about the plaintiff's perception and intent regarding case scope). Further, *Halsey* endorsed an analysis accounting for known claims (such as defined medical expenses) alongside a "fair reading of the unspecified and unliquidated damages sought" (such as pain and suffering, among others). *See id.* at 529 (quoting *Hayes*, 266 F.3d at 573). Under the circumstances of this case, a commonsense view of the claimed injury nature and related damages gives context to the other amount in controversy evidence of record and demonstrates that, at the time of removal, it was more likely than not that Plaintiff sought a sum in excess of the jurisdictional minimum, justifying removal. This satisfies Speedway's burden.

### IV. Conclusion

Accordingly, the Court **DENIES** DE #6 and, to set this case on track for resolution, **DIRECTS** the parties to file, **within 30 days**, an updated jointly proposed case schedule (*see* DE #5 (Rule 26(f) Report), filed on the same day as the instant remand motion). The Court, consistent with current practice, will contemporaneously enter its Standing Referral Order; the assigned

---

[4] In addition to these compensatory damage classes, Plaintiff seeks interest and costs. DE #1-1 at 5, ¶¶ (C) & (D). The analysis here evaluates the sum in controversy *exclusive* of interest and costs, as the removal standard requires.

8

Magistrate Judge will, upon receipt of the parties' updated schedule proposal, develop the case schedule as appropriate.

This the 22nd day of November, 2019.

Signed By:
*Robert E. Wier*
United States District Judge